IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:  5:13cr13/MW/HTC
                                                   5:18cv64/MW/HTC

VERSIAH M. TAYLOR

---

## **REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant Versiah Taylor's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.   ECF Doc. 351.   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).

After careful consideration of Taylor's motion, the record, the relevant law, and the Government's response (ECF Doc. 74), the undersigned recommends the motion be DENIED without an evidentiary hearing, as his claims are without factual and legal support.   *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

# I.    PROCEDURAL HISTORY and BACKGROUND

On November 19, 2013, a federal grand jury returned a forty-five count superseding indictment against Versiah M. Taylor, Tracy L. Collier, and Joshca Michelle Hall (ECF No. 48).    Count One charged that between on or about September 9, 2011, and August 15, 2012, the three defendants conspired together and with others to defraud the United States by filing false federal income tax returns claiming refunds in excess of $503,273.00 in violation of 18 U.S.C. § 287.    Counts Two through Eight charged Taylor and Collier with filing false claims in violation of 18 U.S.C. §§ 287 and 2 and Counts Nine through Sixteen charged Taylor alone with additional violations of 18 U.S.C. §§ 287 and 2.    Counts Seventeen through Twenty-Three charged Taylor and Collier with wire fraud and aiding or abetting in violation of 18 U.S.C. §§ 1343 and 2, and Counts Twenty-Four through Thirty-One charged Taylor alone with additional violations of 18 U.S.C. §§ 1343 and 2. Counts Thirty-Two through Thirty-Eight charged Taylor and Collier with aggravated identity theft and aiding and abetting in violation of 18 U.S.C. § 1028A(a)(1) and 2, and Counts Thirty-Nine through Forty-Five charged Taylor alone with additional violations of §§ 1028A(a)(1) and 2.

The charges stem from Taylor's participation in a prison tax fraud scam from September 2011 through August 2012, with codefendants Collier and Hall.[1] Collier was at that time an inmate at Okaloosa County Correctional Institution and would provide personal identifiable information ("PII") belonging to inmates to Taylor, who was not incarcerated at the time.   Taylor and his girlfriend, Hall, would use the stolen information to file fraudulent tax returns and obtain refunds to which they were not entitled.   Taylor also used other avenues, including creating a sham company set up to assist inmates, to obtain their PII.

Hall pled guilty to Count One and testified against Taylor and Collier at trial. The jury trial, which began on January 27, 2014, and ended on February 5, 2014, resulted in guilty verdicts on all counts of the superseding indictment.   ECF No. 253 at 110–16.

The court sentenced Taylor to a total term of 264 months' imprisonment, followed by three years of supervised release.[2]   It also ordered him to pay $107,422.00 in restitution.   ECF Docs. 192, 254.

---

[1] A more detailed recitation of the offense conduct is set forth in the Eleventh Circuit's opinion on direct appeal.   *United States v. Taylor*, 652 F. App'x 902 (11th Cir. 2016).

[2] The sentence was broken down as follows:   120 months as to Count 1, 60 months as to Counts 2 through 16, 240 months as to Counts 17 through 31, with all counts to run concurrently, followed by 24 months as to Counts 32-45 to run concurrently with each other but consecutive to Counts 1-31.   (ECF Doc. 192 at 4.)

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

Taylor appealed his judgment of conviction to the Eleventh Circuit.[3]    The Eleventh Circuit affirmed Taylor's conviction and sentence.    *United States v. Taylor*, 652 F. App'x 902 (11th Cir. 2016); ECF Doc. 288.    The Supreme Court denied certiorari on March 6, 2017.    *Taylor v. United States*, 137 S. Ct. 1227 (2017); ECF Doc. 322.    Taylor also filed a *pro se* motion for new trial, which was denied by the Court, and affirmed on appeal.    ECF Docs. 295, 299, 301, 341.

Taylor timely filed the instant § 2255 motion on March 3, 2018, asserting eleven (11) grounds of ineffective assistance of counsel.[4]    The Government filed its response on June 14, 2018.    ECF Doc. 360.    On June 13, 2018, over three months after filing his original motion, Taylor filed a motion for leave to file a memorandum of law along with more than 200 pages of exhibits.    ECF Doc. 362. The Court granted the motion and afforded the Government the opportunity to file a further response, which it declined to do.    ECF Docs. 363, 365.    The Court denied Taylor's request for production of documents, and he filed a reply to the

---

[3] While Taylor's appeal was pending, the case was administratively reassigned from Judge Smoak to now-Chief Judge Walker.   (ECF Doc. 266.)

[4] A pro se inmate's pleading is deemed filed at the time it is placed in the prison mailbox or delivered to prison authorities for mailing.  *See Houston v. Lack,* 487 U.S. 266, 276 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule"); *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (under the "prison mailbox rule," a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing).

Government's response.    ECF Docs. 367, 368, 371.

## II.    STANDARD OF REVIEW FOR INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL ("IATC") CLAIMS

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).    To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).    In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.    *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."

*Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted);

*Chandler v. United States*, 218 F.3d 1305, 1315−16 (11th Cir. 2000).    Counsel's

performance must be evaluated with a high degree of deference and without the

distorting effects of hindsight, and the court must consider "whether counsel's

assistance was reasonable considering all the circumstances."    *Strickland*, 466 U.S.

at 688, 689.

To establish prejudice, a defendant must show that, but for counsel's deficient

performance, the outcome of the proceeding would have been different.

*Strickland*, 466 U.S. at 694.    A defendant therefore must establish "that counsel's

errors were so serious as to deprive the defendant of a fair trial, a trial whose result

is reliable."    *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).    Or

in the case of alleged sentencing errors, a defendant must demonstrate that there is a

reasonable probability that, but for counsel's errors, the result of the proceeding

would have been less harsh due to a reduction in the defendant's offense level.

*Glover v. United States*, 531 U.S. 198, 203−04 (2001).

To establish ineffective assistance, it is critical that a defendant provide factual

support for his contentions regarding counsel's performance.    *Smith v. White*, 815

F.2d 1401, 1406–07 (11th Cir. 1987).    Bare, conclusory allegations of ineffective

assistance are insufficient to satisfy the *Strickland* test.    *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).    Also, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.    *Hollis v. United States,* 958 F.3d 1120, 1124 (11th Cir. 2020); *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (*citing Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008)); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002).

Given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."    *Chandler*, 218 F.3d at 1313.    This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007); *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).    "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"    *Dingle*, 480 F.3d at 1099 (*quoting Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

## III.   DISCUSSION

As set forth above, Taylor's petition identifies eleven (11) grounds for relief, three of which contain subparts.   Claims One through Seven assail the performance of his trial counsel, and in the remaining claims Taylor contends the performance of his sentencing/appellate counsel was constitutionally ineffective.

Taylor was initially represented by Michelle Spaven of the Office of the Federal Public Defender from April 5, 2013 through August of 2013.   When Spaven developed a conflict, appointed counsel Jean Marie Downing assumed representation of Taylor.   ECF Docs. 40, 41.   Downing also developed a conflict (ECF Doc. 165), following which Walter Brooks Smith represented Taylor at sentencing and on appeal.   The Government submitted an affidavit from Downing with its response.[5]   ECF Doc. 360-1.

---

[5] In Downing's affidavit she states that when she withdraw from her representation of Taylor, she gave new counsel her entire file without retaining a copy.   Additionally, she has since closed her solo practice and has also lost any electronic files she may have had due to a computer virus. Thus, the information in her affidavit was generated from memory.

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

### A. IATC - Failure to File Pretrial Motions

1. <u>Indictment's failure to state an offense/Subject matter jurisdiction</u>.

Taylor argues trial counsel was constitutionally ineffective because she did not move to dismiss the indictment pursuant to Federal Rules of Criminal Procedure 12(b)(2) and 12(b)(3).   According to Taylor, the indictment did not charge an actionable offense because it did not contain a reference to two subsections of the Internal Revenue Code ("Code"), 26 U.S.C. §§ 6103(a)(3) and (k)(10).   Taylor is incorrect.

Subsection 6103(a) of the Code governs the confidentiality of tax returns and provides for exceptions that authorize disclosure; subsection (k)(10) governs disclosure by the Secretary of the Treasury of certain returns and return information to certain federal and state or contractor-run prison officials.   Contrary to Taylor's assertion, it was not necessary to cite either subsection to invoke the court's jurisdiction or state an actionable offense.   Neither section sets forth a substantive offense, and the indictment identified the statutes setting forth the substantive offenses with which Taylor was charged—18 U.S.C. §§ 2, 287, 1028A(a)(1), and 1343 (ECF No. 48).   Counsel cannot be found constitutionally ineffective for

failing to file a meritless motion.    *See, e.g., Hollis,* 958 F.3d at 1124; *Denson*, 804 F.3d at 1339.

### 2.  *Franks* hearing and Boyd Doctrine

Taylor contends counsel was constitutionally ineffective for failing to request a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) to challenge the affidavit submitted by Special Agent Christopher Pekerol in support of the initial application for a search warrant.    Taylor alleges the affidavit contained misrepresentations and intentional lies that went directly to the magistrate's decision to issue a search warrant.    ECF Doc. 351 at 13-15.

To challenge the veracity of an affidavit in support of a search warrant under *Franks*, a defendant must make "a substantial preliminary showing" that (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "the allegedly false statement is necessary to the finding of probable cause."    *United States v. Votrobek*, 847 F. 3d 1335, 1342 (11th Cir. 2017) (quoting *Franks*, 438 U.S. at 155–56). "'Allegations of negligence or innocent mistake are insufficient,' and the defendant's 'attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.'    *Id.* (quoting *Franks*, 438 U.S. at 171).    Only

upon such a showing is the defendant entitled to an evidentiary hearing on the issue. *Id.* (citing *Franks*, 438 U.S. at 155).

Taylor also contends the Special Agents did not comply with 26 U.S.C. § 7217(a), which proscribes certain persons from requesting any officer or employee of the Internal Revenue Service "to conduct or terminate an audit or any other investigation of a particular taxpayer with respect to the tax liability of such taxpayer." ECF Doc. 362 at 7. He also complains that the Special Agents improperly obtained tax return information and obtained a search warrant for documents otherwise protected from a warrant, subpoena or equivalent process under *Boyd v. United States*, 116 U.S. 616 (1886) (holding that the seizure or compulsory production of a person's private papers to be used as evidence against that person is tantamount to a Fifth Amendment violation). ECF Doc. 362 at 10.

Downing states in her affidavit that she researched Taylor's contention that an agent for the Government had submitted an affidavit containing false statements. ECF Doc. 360-1 at 3. She concluded either that the statements "were not false or that it was better trial strategy to argue faulty investigative techniques at trial." *Id.* She also did "not recall anything about the search warrants rising to the level of a

*Franks* hearing" and noted that challenging the warrant in a pre-trial motion would have afforded the Government a preview of part of the defense strategy.    *Id.*

Counsel clearly considered the issue Taylor now raises and the undersigned does not find that "no competent counsel" would have chosen the strategy she did. *See Provenzano v. Singletary*, 148 F. 3d 1327, 1331-32 (11th Cir. 1998); *Strickland,* 466 U.S. at 689 ("[t]here are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."); *Waters v. Thomas*, 46 F.3d 1506, 1522 (11th Cir.1995) (en banc) ("Three different defense attorneys might have defended Waters three different ways, and all of them might have defended him differently from the way the members of this Court would have, but it does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance.").    Accordingly, the undersigned finds no merit to this IATC claim.

3.  Inclusion of "boilerplate" language in Pekerol's affidavit

Taylor asserts that absent the "boilerplate" and fraudulent language in Pekerol's affidavit, the remaining allegations would not have supporting a finding of probable cause.    ECF Doc. 351 at 15.    Thus, Taylor argues counsel should have moved to suppress such language.    *Id.*    Although Taylor submitted Agent

Pekerol's affidavit as an exhibit, he only provided pages one and three of the 4-page affidavit.    *See* ECF Doc. 362-1 at 118-119.[6]    Regardless, the mere inclusion of "boilerplate" language does not provide a basis to challenge the affidavit.    *United States v. Elbe,* 774 F.3d 885, 889 (6th Cir. 2014) ("we have approved of the use of boilerplate language so long as the information contained in the affidavit provided sufficient probable cause"); *see also, United States v. Hay,* 231 F.3d 630, 636 (9th Cir. 2000) ("In sum, the affidavit (including 'boilerplate' based on the agents' experience), provides a substantial basis for the probable cause determination."). Also, as noted in the previous section, counsel considered Taylor's proposed challenges to the search warrant affidavit and made a strategic decision regarding how to handle it.

### 4.  Motion to Quash

Taylor asserts trial counsel was ineffective because she did not file a "Motion to Quash the Unreasonable Delay, Oppressive and Abusive Use of the Grand Jury Subpoena Process' to obtain testimonial evidence" with an eye towards trial and superseding the indictment.    ECF Doc 351 at 16.    From what the undersigned can

---

[6] The undersigned attempted to verify whether Taylor perhaps submitted a two-sided copy of this document that had not been completely scanned, but the clerk advised that the original, which was initially sent to the Eleventh Circuit, was not retained.

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

discern, Taylor complains (1) the Special Agents exceeded the scope of the grand jury subpoena issued to co-defendant Hall in interviewing her, thus essentially using the subpoena as a "discovery tool"; (2) the Government did not provide an affidavit in connection with issuance of the subpoena, explaining the reason the grand jury was meeting beyond its eighteen-month term or the reason the Government was requesting a handwriting exemplar to compare to evidence that had been in its possession for eighteen months; and (3) the Government failed "to file a pre-issuance motion for court intervention serving a copy on Petitioner or file the affidavit with the court serving a copy on Petitioner to afford any challenges to 'Good Faith' and invoke the Court's limited supervisory power to strike any abuses" of the subpoena process.    ECF Doc. 362 at 11.

With respect to the allegation that the Special Agents exceeded the scope of the subpoena in interviewing Hall, Taylor has provided no authority, and the undersigned is aware of none, that the Special Agents' actions in that regard were improper, much less unlawful.    To the contrary, "it is not uncommon for prosecutors to use the occasion of the witness' grand jury appearance to conduct a preliminary interview."    3 Wayne R. LaFave, et al., Criminal Procedure § 8.8(g) (4th ed. 2015).    Although "[t]he prosecutor may not . . . have the grand jury

subpoena issued as a ploy to secure the attendance of a witness at the prosecutor's office" or "use the subpoena authority to force a witness to submit to an office interview," *Id.*, there is no indication that the prosecutor subpoenaed Hall to provide grand jury testimony for the purpose of forcing her to the prosecutor's office or to submit to an office interview. Rather, it appears that Hall was subpoenaed to testify before the grand jury and that, after she testified, and presumably because of her testimony, agents asked for an interview and handwriting exemplar and Hall agreed.

Likewise, Taylor's suggestion that the grand jury met beyond its term (ECF Doc. 351 at 16) is similarly unavailing. Federal Rule of Criminal Procedure 6(g) provides that a grand jury "may serve more than 18 months only if the court, having determined that an extension is in the public interest, extends the grand jury's service." Fed. R. Crim. P. 6(g). Except as otherwise provided by statute, the extension may be no longer than six months. *Id.* As the Government notes, and the undersigned is aware, grand juries in this district typically served twelve-month terms at the time the indictment was returned in this case, although some grand jury terms were extended in a manner consistent with Rule 6.[7] Taylor has pointed to no

---

[7] *See* ECF Doc. 361 at 18 (Government's response to similar argument made in co-defendant Collier's § 2255 motion).

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

evidence showing that the grand jury that returned the superseding indictment against him served more than twelve months—much less more than eighteen months. Indeed, the original and superseding indictments were returned within an eight-month period (*see* ECF Nos. 1 and 48).

Taylor thus has shown no basis for a motion to suppress evidence derived from the grand jury proceeding. Counsel therefore cannot be found ineffective for failing to file such a motion. *See, e.g., Hollis,* 958 F.3d at 1124; *Denson*, 804 F.3d at 1339.

     5. Speedy Trial

Taylor next argues that counsel was ineffective for "failing to file a pretrial motion to dismiss the indictment with prejudice based on unreasonable delay and oppressive delay to prevent trial counsel from obtaining an affidavit from Petitioner's employer Daniel Marlow in support of a *Franks* Hearing request as asserted [in the prior claim]." ECF Doc. 351 at 17. Read liberally, it appears that Taylor is arguing that the court's *sua sponte* rescheduling of the trial from October 21, 2013, to January 27, 2014, constituted a violation of the Speedy Trial Act, and thus counsel should have moved to dismiss the indictment.

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

Taylor first appeared before Magistrate Judge Bodiford on April 24, 2013. ECF Docs. 17, 18.    A jury trial was scheduled for June 10, 2013.    ECF Doc. 18. Taylor's initial counsel, Michelle Spaven, moved on May 31, 2013, to continue the trial.    ECF Doc. 28.    The court rescheduled the trial to August 26, 2013.    ECF Doc. 29.    On August 16, 2013, Taylor signed a "Waiver of Rights Under Speedy Trial Act" and filed a second motion to continue the trial.    ECF Docs. 33, 34.    The waiver Taylor signed did not contain a time limitation.    The court rescheduled the trial for October 21, 2013.    ECF Doc. 35.    At the request of Taylor's counsel and the Government, the Court reset the trial for January 27, 2014, after substitute counsel was appointed for Taylor.    ECF Docs. 40-42; 44-45.

The waiver signed by Taylor was not limited in time.    In other words, it did not indicate that Taylor was only waiving his right to a speedy trial through a certain date.    Thus, because Taylor signed the waiver, there was no basis upon which counsel could make a speedy trial objection.[8]    *See United States v. Twitty*, 107 F.3d 1482, 1487, 1487–90 (11th Cir. 1997) (considering a claimed Speedy Trial violation brought by a defendant who had waived his right to a speedy trial only through a

---

[8] Although Taylor insinuates that the Government somehow acted untowardly and caused each of his counsel to have a conflict, such insinuations have no factual support in the record.

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

date certain, as opposed to codefendants who executed "indefinite speedy trial waivers"). There thus was no basis for dismissing the indictment on speedy trial grounds, and counsel cannot be constitutionally ineffective for not raising this frivolous argument. *Brownlee*, 306 F.3d at 1066

### 6. Double Jeopardy

Taylor claims counsel was ineffective for failing to move to dismiss the wire fraud counts on the grounds of double jeopardy. ECF Doc. 351. He asserts that conspiracy to defraud contains the same elements that are required to prove wire fraud and aggravated identity theft, and therefore the wire fraud charges should have been dismissed.

The Double Jeopardy Clause, applied to the States through the Fourteenth Amendment, provides that no person may be tried more than once "for the same offence." *Currier v. Virginia*, 138 S. Ct. 2144, 2149, 201 L. Ed. 2d 650 (2018). One of the constitutional protections of the Double Jeopardy Clause is to protect against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969), *overruled in part on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). Historically, courts have treated greater and lesser-included

offenses as the same offense for Double Jeopardy purposes.    *Currier*, 138 S. Ct. at

2150.    This case, however, does not implicate Double Jeopardy concerns.

Taylor was charged with a single conspiracy as well as forty-four substantive

counts arising from the offense conduct in this case.    The substantive counts were

comprised of fifteen counts of filing false claims, fifteen counts of wire fraud and

fourteen counts of aggravated identity theft.    His suggestion that the conspiracy

count required proof of the same elements as the substantive counts is legally

mistaken.    A conspiracy, as the court explained in its instructions to the jury is "an

agreement by two or more persons to commit an unlawful act."    ECF Doc. 145 at

14.    Establishing proof of a conspiracy does not require showing that the defendant

or defendants *acted on* the plan, only that two or more people *agreed on* the unlawful

plan, in this case to defraud the Government.    A conspiracy therefore does not

require proof of the same elements as a substantive charge.

Furthermore, as is clear from the jury instructions, the elements of the three

substantive crimes with which Taylor was charged also do not overlap.    To prove

a violation of § 287, the Government must prove (1) a defendant knowingly

presented a false claim against the United States to an agency of the United States;

(2) the claim was based on a false or fraudulent material fact; and (3) the defendant

acted intentionally, knowing the claim was false and fraudulent.    ECF Doc. 145 at 16.

In contrast, a violation of § 1343 does not require that the fraud be committed against the United States, but it requires that the fraud use interstate wire communications.    The Government must prove (1) a defendant knowingly devised or participated in a scheme to defraud or obtain money or property by using false pretenses, representations, or promises; (2) the false representations were about a material fact; (3) the defendant had the intent to defraud; and (4) the defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.    ECF Doc. 45 at 17.

Finally, a violation of § 1028 can be proven if the Government proves (1) a defendant knowingly transferred, possessed, or used another person's means of identification; (2) without lawful authority; (3) during and in relation to wire fraud and that the defendant knew the identification belonged to a real, as opposed to a fictitious, person.    ECF Doc. 145 at 19.    Counsel cannot be constitutionally ineffective for not raising a frivolous Double Jeopardy argument.    *Brownlee*, 306 F.3d at 1066.

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

7. *Faretta*[9] inquiry

According to Taylor, while represented by counsel, he filed a *pro se* motion to quash abusive use of grand jury subpoena, which was forwarded to counsel by the district court.   ECF Doc. 351 at 19.   Taylor contends that he asked counsel to adopt the motion, which resulted in counsel's request for a "pretrial conference/ *Faretta* Inquiry," being set on January 13, 2014.   Although Taylor and counsel were in attendance at the hearing, he claims he was "separated" from counsel. While the record does indicate that the court scheduled and held a case management conference on January 13, 2014, the record does not reflect a particularized written request for a *Faretta* inquiry.

At the January 13 conference, counsel brought to the court's attention that Taylor had attempted to file a *pro se* motion to quash a subpoena which she did not intend to adopt.   ECF Doc. 238 at 2-3.   Counsel requested the court inquire how Taylor wished to proceed with the motion.   The court advised Taylor:

> First of all, you do not file motions.   You're not allowed to.   Your attorney files the motions on your behalf.   I am ordering you very clearly now:   You are to file no further motions except those that your attorney files on your behalf.   Do you understand that?"

---

[9] *Faretta v. California*, 422 U.S. 806 (1975) (setting forth a defendant's right to self-representation).

ECF Doc. 238 at 3.    Taylor responded "Yes, sir" and the court stated "This will not come up again."    *Id.*

Counsel then noted that she and Taylor had also discussed filing a motion to suppress, but she did not believe it was supported.    The court advised counsel that with respect to the motion, she was the lawyer, and she, not Taylor was to make the determination about whether to file a motion to suppress.    *Id.* at 4.    When the defense indicated its intent to call 20 witnesses, the court again addressed Taylor and admonished him that he did not "get to make all of the decisions in this case" and to rely on the professional advice of his lawyer.    *Id.* at 5-6.    The court also advised Taylor against further communication with co-defendant Hall or her lawyer because such communications would not be privileged.    *Id.* at 11-12.

Taylor asked "Judge, may I speak," but the court instructed him to sit down without acknowledging the request.    Taylor now contends that at that point he intended to "waive counsel and exercise his Sixth Amendment right to self-representation.    ECF Doc. 351 at 19.    He claims that he could not ask counsel to object because he was separated from her and as a result his Sixth Amendment right to proceed *pro se* was infringed upon.

A criminal defendant may exercise his constitutional right to represent himself by making a knowing and intelligent waiver of his Sixth Amendment right to counsel and by clearly and unequivocally asserting his request to proceed *pro se*.    *See Gill v. Mecusker,* 633 F.3d 1272, 1294 (11th Cir. 2011).    A defendant's clear and unequivocal request to represent himself triggers the court's obligation to conduct a *Faretta* hearing, in which the defendant must be informed of the advantages and disadvantages of self-representation.    *See id*. at 1293.

The record contains no evidence that Taylor ever requested of the court, orally or in writing, to represent himself.    Counsel advised him in a letter dated December 31, 2013, that if he wanted to represent himself, he needed to tell the court and counsel would be removed from the case.    ECF Doc. 362-1 at 22.    Despite the myriad pleadings Taylor prepared, he apparently never prepared a motion requesting he be allowed to represent himself nor did he make such an unequivocal pronouncement in open court.    His assertion that self-representation was the basis for his request to speak during the pre-trial conference is self-serving and unsupported.

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

## B. IATC – Failure To Object To Victim Impact Testimony

Taylor contends that counsel was constitutionally ineffective for failing to contemporaneously object to victim impact testimony which misled the jury into finding an intent to defraud.   ECF Doc. 351 at 20.   The lack of objection further prejudiced him, he claims, because it was not preserved for appellate review.

Taylor fails to point to any testimony in particular that he believes was objectionable or identify by whom the testimony was provided.   Regardless, Taylor's argument rings hollow.   Testimony from the victims was not the only evidence the jury heard with respect to the conspirators' intent to defraud.   As the district court stated when it denied Taylor's motion for new trial, "[t]he government presented a very strong case against Taylor.   In addition to correspondence between Taylor and co-conspirators, 76 of the fraudulent tax returns were traced 'to internet protocol addresses affiliated with Taylor….   Further, a co-conspirator testified "that Taylor had orchestrated the scheme and been the one who prepared and filed the fraudulent returns from the laptop."   ECF Doc. 299.   Testimony from the victims was clearly not the only evidence presented.

Taylor's reliance on *United States v. Kruse,* 601 F. App'x 827 (11th Cir. 2015), is also misplaced, as the case does not support Taylor's position.   ECF Doc.

362 at 18.   In *Kruse*, the appellant argued that the trial court erred in admitting testimony from "several victims of appellant's fraudulent investment scheme" because impact of the victim's losses—e.g., that their life savings were wiped out, that one victim could not pay the medical bills, etc.—was irrelevant to the elements of the criminal fraud."   *Id.* at 829.   The government argued, however, that the testimony was relevant to element of the materiality of the appellant's misrepresentations", and the Eleventh Circuit agreed.   *Id.*   Thus, the court held that while the amount of evidence admitted on that issue was troubling, any prejudicial effect was harmless, particularly in light of the overwhelming evidence against the defendant.   *Id.*

Also, unlike *Kruse,* Taylor's case involved identity theft.   Thus, the victim impact testimony was relevant to the charges against Taylor.   *See United States v. McCoun*, 76 F. App'x 199, 200 (9th Cir. 2003).   Furthermore, given the abundance of incriminating evidence in this case, any prejudice from the victims' testimonies was not prejudicial.

### C. IATC – Failure To Obtain Exculpatory Testimony

Taylor asserts that counsel was ineffective for failing to present allegedly exculpatory testimony from Terrance Goodman.   He claims that Goodman would

have testified that Goodman witnessed other individuals use the "red laptop computer on Tammy Lane" that was used to submit fraudulent tax returns and had the laptop placed in Taylor's office.    ECF Doc. 351 at 20.

In September of 2016, Taylor filed a *pro se* motion for a new trial in which he identified Goodman as a "newly discovered witness" who could have offered exculpatory testimony.    ECF Doc. 295.    He claimed he had "no clue that Goodman had such credible relevant evidence until Goodman read the Eleventh Circuit's ruling," thus establishing why this information could not have been previously discovered by the exercise of due diligence.    *Id.* at 2.

Taylor submitted an affidavit from Goodman averring he would have testified that another individual, Marc Logan a/k/a "Money," used Taylor's red laptop from time to time and Goodman had observed "Money" logged onto TurboTax with the laptop.    *Id.* at 5.    Taylor also submitted his own affidavit in which he contended "it was impossible for the Defendant or trial counsel Jean M. Downing to suspect or believe Mr. Goodman would have potential Exculpatory Testimony in the present case."    *Id.* at 8.

The district court denied the motion, and the appellate court affirmed.    In its order, the Eleventh Circuit stated that the "newly discovered evidence in Goodman's

affidavit could, with due diligence, have been discovered before or during the trial."

ECF Doc. 341 at 5.   Despite having admitted that this alleged exculpatory evidence

could not have been discovered prior to or at the time of trial, Taylor now asks the

court to find that counsel was constitutionally ineffective for not uncovering what

he contends it was "impossible" to have known.

In Downing's affidavit, as to this ground, she states as follows:

> I recall attempting to get into evidence something about Terrence
> Goodman, who may have cashed a tax refund check and I do recall
> attempting to bring in evidence that would place the blame for the use
> of the laptop and the log ins on the deceased Marc Logan.   I do not
> recall why this evidence did not come in.   It is possible that having
> Terrance Goodman testify would have helped Defendant.   I simply
> can't recall the specifics.   Marc Logan could not then and cannot now
> be called as he is deceased.   I believe that the Trial Judge refused to
> allow me to even argue anything about Terrence Goodman signing a
> refund check or put forth the theory about Marc Logan.

ECF Doc. 360-1 at 5-6.   Thus, contrary to what Taylor stated when he moved for a

new trial, Downing recalls that (as the Eleventh Circuit concluded), they were aware

of potential exculpatory evidence from Goodman, but the evidence did not come in.

Although Downing does not recall why the evidence did not come in or may have

been excluded, the fact that she attempted to get the information before the court

dispels any finding that Downing was ineffective.

Also, Taylor's suggestion that Goodman's testimony could have absolved him

of any liability in this case is not well taken.    Even if Taylor had not been directly responsible for the submission of all the returns charged in the indictment, the Government proved his involvement in the conspiracy beyond a reasonable doubt. And, even if Goodman had testified, Taylor's sentencing exposure likely would have remained unchanged.    The undersigned notes that co-defendant Collier, who was charged in only twenty-two counts of the forty-five count superseding indictment, was nonetheless held accountable for the same amount of loss as Taylor.[10] Therefore, he has not shown counsel was constitutionally ineffective.

### D. IATC – Failure To File A Notice Of Intent to Rely On Alibi Testimony

Taylor argues that counsel was constitutionally ineffective because she failed to timely file a notice of intent to rely on alibi testimony.[11]    Taylor claims that his brother[12] Antonio Taylor, would have testified that "between Martin Luther King

---

[10]  Both Taylor and Collier had base offense levels of 7.   They each received a 14-level increase for the amount of loss, a two level increase for sophisticated means, and a four level increase for the number of victims.   *Compare* ECF Doc. 174 Taylor PSR ¶'s 36-39 and ECF Doc. 175, Collier PSR ¶'s 36-39.

[11]  One of the grounds raised by Taylor in his direct appeal was that the court erred in excluding testimony from Antonio Taylor.   The Eleventh circuit affirmed the judgment and, as to this ground, found that the district court properly excluded A. Taylor's testimony because Taylor had not timely notified the Government of his intent to rely on an alibi witness in accordance with Rule 12,1(a) of the Fed. R. Crim. P.   *Taylor*, 652 F. App'x at 907; ECF Doc. 288 at 10.

[12]  Although Antonio Taylor is identified in the Eleventh Circuit opinion as Taylor's cousin, the PSR identifies him as as Taylor's brother.   ECF Doc. 174, PSR ¶ 77.

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

Jr.'s birthday 2012 [January 16, 2012] through January 27, 2012," Taylor visited Antonio Taylor and they traveled together to Panama City, Florida.    Taylor claims this time period covered all of the substantive counts of the indictment (ECF Doc. 351 at 21) and would have resulted in his acquittal of all charges.

As an initial matter, Taylor is mistaken regarding the impact of his brother's testimony, had he been allowed to testify.    While the majority of the offense conduct underlying the substantive counts was alleged to have occurred during that time frame, seventeen of the forty-four substantive counts were alleged to have occurred before or after those dates.[13]    Thus, as noted by Downing in her affidavit, even if Antonio Taylor's testimony were credited in its entirety by the jury, it would not have been a complete defense to the charges.    ECF Doc. 360-1 at 6. Regardless, the record also shows that counsel did not file a notice of intent to rely on an alibi because she did not have sufficient information from the brother to establish that he was an alibi witness.

---

[13] The following counts took place before or after the dates to which Antonio Taylor would have testified:    Counts Eight (2/13/2012), Nine (9/26/2011), Ten (9/30/2011), Eleven (1/15/2012), Fifteen (2/10/2012), Sixteen (1/31/2012), Twenty-three (2/13/2012), Twenty-four (9/26/2011), Twenty-five (9/30/2011), Twenty-six (1/15/2012), Thirty (2/10/2012), Thirty-one (1/31/2012), Thirty-eight (2/13/2012), Thirty-nine (9/26/2011), Forty (1/30/2011), Forty-one (1/15/2012), Forty-five (2/10/2012).

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

Federal Rule of Criminal Procedure 12.1 governs the requisite notice of an intent to rely on an alibi defense.    The Government may request in writing that the defendant notify the Government of any intended alibi defense.    Fed. R. Crim. P. 12.1(a)(1).    The Government's request must state the time, date and place of the alleged offense.    *Id.*    Upon receipt of such a notice, the defendant may respond with a notice that specifies "(A) each specific place where the defendant claims to have been at the time of the alleged offense; and (B) the name, address, and telephone number of each alibi witness on whom the defendant intends to rely." Fed. R. Crim. P. 12.1(2).

Taylor claims in his affidavit that he provided counsel with the information necessary for the alibi defense.    ECF Doc. 351 at 32-33.    This statement is unsupported by the record.

As discussed in Section III.A.7., the district court held a case management conference on January 13, 2014, at defense counsel's request after counsel received a slew of motions that Taylor had sought to file *pro se*.    During the conference, the parties also discussed the issue of getting witnesses subpoenaed as Taylor sought to call twenty (20) witnesses, including some prisoners.    As part of that discussion, the Government mentioned that it had requested an "alibi notice."    ECF Doc. 238

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

at 7.

Despite not having filed a Rule 12.1 notice, defense counsel sought to call Antonio Taylor as a witness at trial, which resulted in a side bar with the court.    The Government advised the court that it was concerned defense counsel was going to elicit testimony from Antonio Taylor that Defendant Taylor was not in Panama City during certain time frames.    ECF Doc. 257 at 67.    The Government's counsel explained that she had a "jail call between Mr. Taylor, Versiah Taylor and Antonio Taylor where it appears they are setting up this alibi," a call she had turned over to defense counsel.    *Id.*

In response, Downing asked for a continuance because although the Government had provided her with 40 hours' worth of calls, when she listened to them she did not consider any of the information to be relevant and did not recall listening to a call between Antonio Taylor and her client.    ECF Doc. 257 at 68. Counsel further advised the court that while she could have missed Antonio Taylor's call during her review of the calls, Antonio Taylor "never told [her] that he can specifically give a day, date, and time as to when he and his brother were traveling where over the spring."    *Id.* at 68-69.    Had she had that information, counsel "would have definitely provided an alibi [notice]."    *Id.* at 69.

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

The Government then asked the Court not to allow Taylor to circumvent Rule 12.1 and bring in witnesses to testify, without specifics, that Taylor was not in Panama City during relevant portions of the conspiracy.    ECF Doc. 257 at 69. The court stated to Downing that if she was going to "suggest that [Taylor] was not here during the time of the alleged crimes, that falls directly under 12.1, and [she] had not made the required predicate and will not be – cannot present testimony to that effect now."    *Id.*

Downing agreed, but argued that she should be allowed to ask whether the two men traveled together without reference to specific dates.    ECF Doc. 257 at 69. Downing explained that while she cannot use Antonio Taylor to suggest that Defendant Taylor was not in Panama City at the time of the crime, she would like show that Defendant Taylor was not in his office three weeks before the search warrant was served and that he did not travel with a red laptop or that Antonio Taylor never saw Defendant Taylor with a red laptop during their travels.    *Id.* at 70.    After additional argument from the Government, the court held that Downing could ask about the red laptop but not a question that would infer Taylor was not in Panama City at the time of the charged conduct.    *Id.* at 70-71.

After the trial and before sentencing, counsel filed a motion for new trial,

arguing Taylor should have been allowed to provide information to the jury about Taylor's whereabouts during the filing of the returns despite counsel's failure to file a 12.1 notice.   ECF Doc. 156 at 2-3.   Downing explained in that motion, as she did at trial, that she "did not file a notice of alibi because the witness couldn't give a specific date or time of being out of town at the time the request was made by the Government," which is part of the information required to be set out in a 12.1 notice. *Id.* at 2.

Counsel's repeated submissions and representations to the court on this issue clearly show that Antonio Taylor had not provided counsel with information sufficient for her to file a Rule 12.1 notice.[14]   Thus, she could not have been constitutionally ineffective for failing to do so.   *See, e.g., Hollis,* 958 F.3d at 1124; *Denson*, 804 F.3d at 1339.

## E. IATC - Kingston Murphy Proffer Agreement

One of the witnesses the defense sought to be call at trial was Kingston Murphy.   Murphy was co-defendant Hall's sister and had been employed at the same company that was formed by Taylor to obtain inmates' PII.   ECF Doc. 248 at

---

[14] In Downing's affidavit she does not dispute that she did not file a timely Rule 12.1 notice, and references the explanation she gave when she filed a motion for new trial – namely, as discussed herein, that she did not have sufficient information to file the notice.   ECF Doc. 360-1 at 6.

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

168, 176.   Murphy was also involved with filing a fraudulent tax return, but was not charged.   ECF Doc. 252 at 72.   Hall advised investigators about Murphy's involvement in the tax scheme fraud and arranged for Murphy to meet with investigators.   *Id.*

Taylor contends that Murphy had entered into an agreement with the Government to provide information with the understanding that the Government would not pursue charges against her.   Despite the agreement, however, the Court excused Murphy from testifying after she asserted her Fifth Amendment rights. Taylor argues trial counsel was ineffective for not objecting to Murphy's dismissal.

At the trial, the Government raised concerns that questions the defense sought to ask Murphy would implicate her right against self-incrimination.   ECF Doc. 257 at 28-29.   The Government acknowledged that they had received statements from Murphy, that they told her she was not a target and that they were not interested in changing her criminally.   *Id.* at 29.   However, the Government argued that Murphy making a statement to the Government was completely different from her having to take the stand and make the same statement under oath.   *Id.*   The Government, thus, sought to have the court Mirandize Murphy (and other similar witnesses) outside the presence of the jury.   *Id.* at 29.

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

Downing agreed there was a possibility of self-incrimination as to Murphy but also argued that her testimony was relevant and not being sought simply so that Murphy would have to take the Fifth Amendment.   ECF Doc. 257 at 29-30. Candidly, she admitted that the defense wanted to ask Murphy about her involvement with the alleged fraudulent income tax refund scheme because the defense theory was that it was not Taylor who was filing the tax returns, but other people, such as Hall and Murphy.   *Id*. at 35-36.

After hearing the proffer of testimony defense counsel sought from Murphy, the Court addressed Murphy outside the presence of the jury and advised her of her right to remain silent, that anything she said could be used against her, and of her right to consult with counsel.   ECF Doc. 257 at 96-97.   The Court then asked Murphy if she was willing to proceed with questions and testimony and Murphy stated "[n]o, sir.   I want to remain silent."   *Id.* at 97.   At that point, the Court asked the parties whether there was any reason why it should not dismiss Murphy, and Downing responded "[n]o legal reason that I can think of your honor."   *Id.* at 97.

Taylor argued on direct appeal that the trial court erred in dismissing Murphy. The Eleventh Circuit, however, determined that there had been no trial court error

because "Murphy's out-of-court statement to the government provided 'sufficient uncontested evidence,' from which the district court concluded that there was a real and substantial risk that Murphy's answers to the defendant's questions would incriminate her."[15]    ECF Doc. 288 at 15.    Given the district court's independent determination "that Murphy could legitimately assert her Fifth Amendment privilege in response to essentially all of the questions she would be asked," and the defense's admission that the information sought from Murphy pertained to her involvement in the tax fraud scheme, it would have been futile for defense counsel to have lodged an objection.    Indeed, during opening statements, defense counsel told the jury that "Murphy is probably desperately afraid of being charged at this point, and a return was filed for her as well."    ECF Doc. 258 at 45.

Taylor asserts that during this proffer Murphy revealed exculpatory testimony concerning Taylor's whereabouts and his use of the red laptop, which would have led to a verdict of not guilty on all the substantive counts.    ECF Doc. 351 at 22. He complains that when the defense called Murphy as a witness, the Government

---

[15] Although the Eleventh Circuit also noted that neither defense counsel had objected to dismissing Murphy and both agreed there was no reason not to do so; counsel's failure to object was not the primary basis of the court's decision.

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

breached the agreement by threatening Murphy with prosecution if she elected to testify to the contents of the proffer.   There is no support in the record for this argument.

The Government never threated to prosecute Murphy.   Also, as the Government explained at trial, the fact that they told Murphy they did not intend to charge her was reflective of the fact that the Government generally does not prosecute cases based on the witness's own statements.   ECF Doc. 257 at 29. Murphy's statements in that context are entirely different from statements she makes in open court while under oath.   *Id.*   Taylor's suggestion that Murphy could have been compelled to testify, or that counsel was constitutionally ineffective for failing to make this request is simply without legal merit.

### F.  IATC – Failure to Request Jury Instructions

Taylor asserts trial counsel was constitutionally ineffective for failing to "propose a non-criminal conduct instruction averring the correct statement of the law pre 2013 Amendment," referencing his Fifth Amendment Due Process rights, Ex Post Facto Prohibition Clause, and Sixth Amendment right to a fair trial.   ECF Doc. 351 at 22-23.   This claim, even as further explained in Taylor's memorandum, is nonsensical, and counsel cannot be constitutionally ineffective for failing to

request a jury instruction such as Taylor describes.    *Hollis*, 958 F.3d at 1124; *Winfield*, 960 F.2d at 974.

The second part of this ground for relief, alleging counsel performed deficiently because she failed to timely file a proposed special instruction on wire fraud deception, also fails.    Taylor claims counsel should have proposed a special instruction to the effect that he bought PII from Collier, and Collier did not know what the PII would be used for, so there was no conspiracy to defraud, only to deceive.    He relies on *United States v. Takhalov*, 827 F. 3d 1307 (11th Cir. 2016).

*Takhalov* involved a scheme where defendants, owners of bars and nightclubs, hired foreign women to pose as tourists and lure visiting businessmen into the bars and nightclubs.    *Id.* 827 F. 3d at 1310.    Defendants claimed that was the end of the scheme, while the Government presented evidence that once the men were inside the clubs, employees would engage in behavior such as pouring vodka in beer to get the men drunker, misrepresent the prices of drinks, hide menus and prices, and forge the men's signatures on credit card receipts.    Defendants claimed that the men were not truly victims because they knowingly entered the clubs, bought liquor and drank with their female companions and as such they got what they paid for.    They thus asked the court to instruct jurors that "they must acquit if they found the defendants

had tricked the victims into entering a transaction but nevertheless gave the victims exactly what they asked for and charged them exactly what they agreed to pay." *Id.* at 1310.

There was no basis for requesting such an instruction in this case. None of the victims bargained for defendants to steal their PII, file fraudulent tax returns and retain the funds. Counsel was not constitutionally ineffective for failing to request same. *Hollis*, 958 F.3d at 1124; *Winfield*, 960 F.2d at 974.

### G. IATC - Federal to Federal Unwarranted Disparity Cap

Taylor claims that before sentencing he provided cases to counsel that were "virtually identical" to his case, and counsel performed deficiently by failing to argue that there was a disparity between the sentence Taylor received and that of the defendants in the other cases.

In *United States v. Saybolt*, 577 F. 3d 195 (3rd Cir. 2009), the only appellate decision Taylor references, co-defendants Saybolt and Welch were convicted of crimes stemming from their participation in a conspiracy to file multiple false, fictitious, or fraudulent claims with the IRS. The indictment charged conspiracy to defraud the United States in violation of 18 U.S.C. § 286 and thirty-five substantive counts of filing false returns in violation of 18 U.S.C. § 287 and 2. The men filed

returns claiming in excess of $500,000 in undeserved refunds, for which the IRS paid over $200,000.   Any proceeds were divided into thirds, with one-third to the each of the two defendants, and one-third to the complicit individual who had provided his or her PII after having been promised money in exchange for doing so. Saybolt, who was convicted of conspiracy and 29 substantive charges, was sentenced to forty-eight months of imprisonment, and Welch, who was convicted of conspiracy and 35 substantive charges, was sentenced to 120 months of imprisonment.   *Id.* at 198.   Welch's sentence included enhancements for his role as an organizer or leader and for the sophisticated means used to commit the crime. *Id.* at 197 n.1.   Taylor contends counsel performed deficiently by not arguing that his sentence should not have exceeded the ten-year sentence imposed on Welch. His argument fails.

First it is virtually impossible to find truly "similarly situated" defendants. Myriad factors go into the calculation of an appropriate sentence in every case. Guidelines calculations are based on the offense conduct, an individual's role in the offense, prior criminal history, efforts at cooperation, and personal circumstances, among other things.   In this case, the court need not look further than the offense conduct to conclude that Taylor and defendant Welch were not similarly situated.

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

Unlike the defendants in *Saybolt*, Taylor was also charged with violations of 18 U.S.C. § 1343, and it was these counts which carried the longest sentences.[16]

Thus, *Saybolt* would not have offered support for a sentencing disparity claim, and counsel was not constitutionally ineffective for failing to argue such.    *See, e.g.,* *Hollis*, 958 F.3d at 1124; *Winfield*, 960 F.2d at 974.

### H.  IATC - Managerial Role Enhancement

Taylor received a three-level adjustment in the PSR due to his managerial role. ECF Doc. 174.[17]    He contends counsel should have objected, because the evidence established only the participation of the three co-defendants, which was insufficient for the application of the enhancement.    ECF Doc. 351 at 25.

The PSR assessed the adjustment based on Taylor directing co-defendant Hall in a conspiracy that involved at least the three codefendants "as well as numerous other individuals who willingly provided their personal identification information." ECF Doc. 174, PSR ¶ 41.    These willing participants were not included in the number of victims.    *Id.,* PSR ¶ 39, n. 2.    Counsel stated at sentencing that he could

---

[16] Taylor's sentence on the conspiracy charge (120 months) and the substantive § 287 charges (60 months) was in line with the 120-month sentences imposed on defendant Welch in *Saybolt.*

[17] There are two entries titled Final Presentence Investigation Report on the electronic docket. However, the May 5, 2014 entry is actually the docketing of the victim impact statements.    ECF Doc. 179.

not advance a good faith objection to the role adjustment if the evidence came out like he thought it did at trial.    ECF Doc. 254 at 14.

Counsel's contemporaneous assessment is well-taken and he was not constitutionally ineffective for failing to make the objection Taylor now puts forth. *See Hollis*, 958 F.3d at 1124; *Winfield*, 960 F.2d at 974.

## I.  IATC - Right of Allocution

Taylor asserts that he was not allowed to properly exercise his right of allocution at sentencing, and counsel was constitutionally ineffective for failing to timely object.

Rule 32 of the Federal Rules of Criminal Procedure provides that before imposing sentence a district court must ask a defendant whether he wishes to speak for himself or present any information to mitigate the sentence.    Fed. R. Crim. P. 32(i)(4)(A)(ii).    This right to speak is referred to as the right of allocution.    The right of allocution allows "the defendant to personally 'make a final plea on his own behalf to the sentencer before the imposition of sentence.'"    *United States v. George*, 872 F. 3d 1197, 1206 (11th Cir. 2017) (quoting *United States v. Prouty*, 303 F. 3d 1249, 1251 (11th Cir. 2002).    "Because '[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence,

speak for himself,' denial of allocution has been grounds for reversal in the common law world since the seventeenth century." *United States v. Doyle*, 857 F. 3d 1115, 1118 (11th Cir. 2017) (quoting *Green v. United States*, 365 U.S. 301, 304 (1961) (plurality opinion)). Denial of the right of allocution is plain error. *George*, 872 F. 3d at 1207.

Prejudice may be presumed and reversal is required if the possibility of a lower sentence existed. *Prouty*, 303 F. 3d at 1252, 1253; *Doyle*, 857 F. 3d at 1119-1120 (distinguishing cases where defendants were sentenced under the mandatory guidelines regime at the low end of the applicable range as opposed to post-*Booker*[18]). Taylor was sentenced under an advisory guidelines range, and he was not sentenced to a statutory mandatory minimum sentence. Thus, if the court finds Taylor's right to allocute was denied, prejudice may be presumed because a lower sentence was available to the court. *See Doyle, Prouty, supra.* However, the record does not support such a finding.

In this case, the court addressed Taylor at sentencing and asked if there was anything he would like to say. ECF Doc. 254 at 60. Taylor began by mentioning

---

[18] *United States v. Booker*, 543 U.S. 220, 245 (2005) (holding that the U.S. Sentencing Guidelines should be treated as advisory rather than mandatory).

various *pro se* motions he said he had filed.    The court reminded him he was represented by counsel, the clear implication being it was incumbent upon counsel to file motions on Taylor's behalf.    Taylor continued and stated he did not know he had to have counsel to file what he termed a "post-conviction" motion.    The court stated "[a]ll motions you had filed are denied."    It then asked "[i]s there anything further before I pronounce sentence?"    *Id.* at 60-61.    The record reflects no additional comment from Taylor.    At that juncture the Government clarified for the record that Taylor's numerous *pro se* submissions had not been filed with the court. Rather, throughout the case, the clerk forwarded any such motions to defense counsel instead of filing them.    *Id.* at 61.    Following this discussion, the court imposed sentence.

The record reflects Taylor was afforded an opportunity to address the court. What may be his after-the-fact remorse about not having spoken in his own behalf with respect to his sentence does not establish a constitutional violation.    Counsel was, thus, not constitutionally ineffective.    *See Brownlee*, 306 F. 3d at 1066.

### J.  Appellate Counsel

Taylor asserts his attorney performed deficiently during his appellate representation in several ways.    First, counsel did not raise either the jurisdictional

issue trial counsel had preserved or unspecified "evidentiary error."    ECF Doc. 351

at 27.    Second, despite having preserved multiple challenges to guidelines

calculations, counsel challenged only the "sophisticated means" enhancement on

appeal, which Taylor characterizes as the "weakest enhancement."    *Id.* at 27-28.

Third, he complains counsel failed to obtain a transcript of the January 13, 2014 pre-

trial conference/*Faretta* inquiry and raise "structural errors" arising from the district

court's alleged partial *Faretta* inquiry.

A criminal defendant is entitled to the effective assistance of counsel on direct

appeal.    *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).    To prevail on an ineffective

assistance of appellate counsel claim, a defendant must show (1) appellate counsel's

performance was deficient, and (2) but for counsel's deficient performance, he

would have prevailed on appeal.    *Shere v. Sec'y Fla. Dep't of Corr.*, 537 F.3d 1304,

1310 (11th Cir. 2008); *see Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009)

(holding that IAAC claims are governed by the same standards applied to trial

counsel under *Strickland*).    Counsel plainly is not ineffective for failing to raise a

meritless issue on appeal.    *Shere*, 537 F.3d at 1311; *Ladd v. Jones*, 864 F.2d 108,

110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not

ineffective for counsel not to pursue them.").

Taylor has not shown that any of the issues he claims counsel should have raised on appeal were meritorious or if counsel had raised them it would have changed the outcome of the proceedings in this case.    Thus, Taylor has not shown that his appellate counsel failed the *Strickland* test, as necessary for the court to find relief warranted on this ground.

## IV.    CONCLUSION

An evidentiary hearing is not necessary to resolve Taylor's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (not every claim of ineffective assistance of counsel warrants an evidentiary hearing). As the foregoing discussion illustrated, Taylor has not met the high burden of showing either of his attorneys was constitutionally ineffective under *Strickland* and its progeny.    He was convicted, not because of the constitutional infirmity of his legal representation, but rather on the strength of the evidence adduced by the Government, despite the efforts of his attorneys.    (*See* ECF Doc. 288 at 4; ECF Doc. 299.)    Therefore, Taylor's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 should be denied in its entirety.

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

## V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.    Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.    § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).    Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."    If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Case Nos.: 5:13cr13/MW/HTC; 5:18cv64/MW/HTC

Based on the foregoing, it is respectfully RECOMMENDED:

1.    The Motion to Vacate, Set Aside or Correct Sentence (ECF Doc. 351) be

DENIED.

2.    A certificate of appealability be DENIED.

At Pensacola, Florida, this 2nd day of November, 2020.


*s/ Hope Thai Cannon*
Hope Thai Cannon
United States Magistrate Judge



## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>   An objecting party must serve a copy of its objections on all other parties.   A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**